[Civ. No. 6645.   Third Dist.   Dec. 29, 1941.]

NINA FALK, Appellant, v. CHARLES C. FALK, Respondent.

Edwin V. McKenzie and Frank J. Mahoney for Appellant.

Hill & Hill, H. L. Preston and Harry W. Falk, Jr., for Respondent.

THE COURT.—The plaintiff was awarded an interlocutory decree of divorce on the grounds of extreme cruelty and adultery. It was adjudged that the community property of the spouses should be divided equally between them. From that portion of the decree which determined that certain-described stocks and securities belong to the defendant as his separate property, and from that portion which limited the award to plaintiff of only one-half of the community property, this separate appeal was perfected.

The defendant is a physician and surgeon. He was previously married. At the time of his marriage to the plaintiff he was possessed of real and personal property of a value in excess of one hundred and fifty thousand dollars. The plaintiff and defendant were married at Pomona, California, September 16, 1915, and lived together as husband and wife for twenty-one years. During that period of time he successfully practiced his profession and operated a hospital at Eureka, from which sources he derived a large income. It was his custom to maintain a bank account in which he deposited and commingled the community proceeds derived from his business and profession with funds secured from the sales of stocks, bonds, mortgages, securities and lands. After his second marriage he sold numerous certificates of stocks, bonds and other securities, together with parcels of real property and deposited the proceeds therefrom in the bank account with the community funds. The court found that it was impossible to trace the source of any of the moneys deposited in that fund. From that community fund the de-

fendant, from time to time, purchased several parcels of real property and numerous blocks of stock and also financed other investments. At the time of the divorce there was considerable cash on hand, unpaid debts due for professional services, amounts due on contracts, stocks, bonds, mortgages, securities, real properties, household goods and office furniture. Some of the properties were clearly identified as defendant's separate property. Some of them were determined to be community property. On account of the commingling of funds it was impossible to trace the source of proceeds from which many of the stocks and securities were purchased subsequent to the marriage.

The court found that seven parcels of specifically-described real property were purchased after the marriage from community funds, and that they are therefore community property; that the balance of the real estate was defendant's separate property; that thirty-one items of particularly-described stocks, bonds and securities, aggregating the sum of $131,000, were purchased since the marriage from community funds in which the proceeds of sales of defendant's separate property were commingled in such a manner as to render it impossible to trace the source from which the purchase moneys were derived; that other specified shares of stock, bonds and securities are the separate property of the defendant; that the moneys on hand, the accounts due, together with seventeen other identified certificates of shares of stock, bonds and securities, are the community property of the spouses, and that all community property shall be divided equally between them.

Regarding the disposition of thirty-one items of stocks, bonds and securities, previously mentioned, aggregating the par value of $131,000, the court determined in finding number IX that, since those securities were purchased after the marriage from funds derived from both community and separate properties which were commingled in such a manner as to render it impossible to trace the sources thereof, sixteen of them should be deemed to be defendant's separate property because he owned a similar amount of such properties before the marriage. Finding number IX reads as follows:

"That at all times since the marriage of plaintiff and defendant on the 16th day of September, 1915, defendant has exercised complete control over all of the community funds

and property of plaintiff and defendant and he has, during all said times deposited in the same bank accounts and safe deposit boxes indiscriminately and without earmarking, segregation, or any means of identification, the funds derived from his earnings as a physician and surgeon, together with the funds derived from all other sources, and has during all of said time so intermixed and commingled all of said community earnings and funds with the funds derived by him from all other sources, including his separate property, that it is now impossible to trace or identify any of said funds as the separate property of defendant. That during said period of time defendant has been in receipt of a gross income from the practice of his profession as a physician and surgeon amounting to the sum of Two Hundred Sixty-three Thousand Four Hundred Twenty-five and 21/100 Dollars, all of which was the community property of the parties hereto.''

Finding number XII regarding the same subject reads as follows:

''That all of said securities hereinabove described have been purchased since said marriage out of and from funds commingled and intermixed as hereinabove, in paragraph IX set out, and it is now impossible to trace the source of the purchase price of any thereof to the separate funds or property of defendant; but because of the fact that defendant, at the time of the marriage of plaintiff and defendant owned as his separate property, bonds of a par value of Twenty-four Thousand Dollars, and a promissory note of Northern California Hospital Association in the amount of Eighteen Thousand Eight Hundred Sixty-seven and 70/100 Dollars and the proceeds of said bonds and promissory note were used to purchase other securities, which can not at this time be identified or determined, the court finds that of the securities on hand at the date of the trial of this action, Forty-two Thousand Eight Hundred Sixty-seven and 70/100 Dollars in value thereof is derived from the proceeds of said bonds and promissory note and for that reason the court finds that the following of the above described securities are the separate property of defendant, to-wit:'' (Here follows description of the property.)

We are of the opinion the trial court erroneously determined that any portion of said thirty-one items constitutes separate property belonging to the defendant.  The

rule is well established in California that the presumption exists that all property acquired by the husband or wife after their marriage is community property; that the burden is on one who disputes the application of that principle to affirmatively prove that such property is, in fact, separate property, and that when separate and community properties are so commingled that it is impossible to identify them or trace the funds from which they were purchased, the whole must be deemed to be community property. ▆ It follows that, since the court has found in the present case that it is impossible to trace the source. from which said thirty-one items of stocks, bonds and securities were purchased, they must all be considered to be community property, and that the court erred in determining that any of such property constitutes defendant's separate property.

▆ Pursuant to section 164 of the Civil Code, the presumption exists that property acquired by either of the spouses during the marriage is community property, and this presumption may be rebutted only by satisfactory proof to the contrary. (*Estate of Jolly,* 196 Cal. 547 [238 Pac. 353]; *Estate of Caswell,* 105 Cal. App. 475 [288 Pac. 102]; 5 Cal. Jur. 311, sec. 22; 3 Cal. Jur., Ten Year Supp. 553, sec. 61; 1 Witkin's Summary of Calif. Law, p. 686.] The nature or *quantum* of evidence which is necessary to rebut this presumption is not involved on this appeal for the reason that the evidence is not before us. Regarding the amount of evidence which will be deemed to rebut the presumption, see 3 California Jurisprudence, Ten Year Supplement, p. 573, secs. 75-79. It has been held that where the marriage relationship has existed for a long period of time the presumption is entitled to greater weight. (*Estate of Jolly, supra;* 3 Cal. Jur. Ten Year Supp., p. 554.) ▆ The burden is upon the one who controverts the presumption to prove his claim regarding the character of property acquired during the marriage. Unless that contention is supported by satisfactory proof, the trial court is bound to decide the controversy in accordance with the presumption. (*Estate of Caswell, supra,* at p. 483; *Lightner Mining Co.* v. *Lane,* 161 Cal. 689, 708 [120 Pac. 771, Ann. Cas. 1913C, 1093]; *Estate of Fellows,* 106 Cal. App. 681 [289 Pac. 887]; 3 Cal. Jur. Ten Year Supp., p. 525, sec. 40, and p. 557, sec. 63.)

▆ The commingling of separate property, or the pro-

ceeds therefrom, with community property or funds in such a manner as to make it impossible to identify the separate property or to trace the source of the separate funds renders the entire fund or property community in its nature, unless the community funds are inconsiderable in amount. ■ When it is impossible to trace the source of commingled funds, the presumption that all property which is acquired during the marriage is community, will be controlling. (*Fountain* v. *Maxim*, 210 Cal. 48, 51 [290 Pac. 576] ; *Title Ins. & Trust Co.* v. *Ingersoll*, 158 Cal. 474, 485 [111 Pac. 360] ; *Estate of Cudworth*, 133 Cal. 462, 467 [65 Pac. 1041] ; *Maskuns* v. *Maskuns*, 93 Cal. App. 27 [268 Pac. 1093] ; *Truelsen* v. *Nelson*, 42 Cal. App. (2d) 750 [109 Pac. (2d) 996] ; 3 Cal. Jur. Ten Year Supp. 524, sec. 40; McKay's Community Prop., p. 215; 11 Am. Jur. 198, sec. 38; 1 Witkin's Summary of Calif. Law, p. 686, sec. 5B.)

■ Where the husband, who has control of the community funds, without the consent of his wife invests a portion thereof in his own separate property, he is bound to account to the community funds for such misappropriation. In the *Estate of Chandler*, 112 Cal. App. 601 [297 Pac. 636], a judgment of the trial court was reversed for error in holding that a definite amount of community funds which was expended for improvements on the husband's separate property became an inseparable part thereof and that it was therefore lost to the community fund.

■ In the present case this court has definitely held that the thirty-one items of stocks, bonds and securities heretofore mentioned were purchased during the marriage from community funds. It follows that the awarding to the defendant of any portion of the property so purchased, as his separate property, is in conflict with the well-established rule to the contrary.

■ The findings of the court heretofore quoted are conflicting and irreconcilable. The findings are contrary to law. The portions of the judgment from which this appeal was perfected is therefore not supported by the findings. The court has specifically found that the thirty-one items of stocks, bonds and securities previously mentioned were purchased from commingled funds of both separate and community property so that it is impossible to trace the source from which the purchase price was derived. The court then erro-

neously found that because the defendant possessed bonds of the value of $24,000 and a note for $18,867.70 before the marriage, which were his separate property, therefore sixteen-described items of said stocks and securities, of the aggregate value of $42,867.70, purchased from community funds, should be deemed to be defendant's separate property, and should therefore be awarded to him as his separate property.

The respondent contends that the last-mentioned finding, to the effect that the sixteen named items are defendant's separate property, is the finding of an ultimate fact and is therefore controlling over the previous findings which amount only to the determination of probative facts. In support of this assertion he relies on the following authorities, to-wit: *Rankin* v. *Newman*, 107 Cal. 602, 608 [40 Pac. 1024, 41 Pac. 304] ; *Smith* v. *Acker*, 52 Cal. 217 ; *Commercial Bank* v. *Redfield*, 122 Cal. 405 [55 Pac. 160, 772] ; and *Estate of Hill*, 167 Cal. 59 [138 Pac. 690]. We are of the opinion the preceding authorities are not determinative of that issue in the present case. They are clearly distinguishable from the facts of this case. In this case the court finds that the stocks and securities in question were purchased during the marriage from commingled community funds. That is the finding of an ultimate fact, from which the court was bound to conclude, under the well-established rule of law, that all of those items constitute community property. The subsequent erroneous finding that sixteen of those items were defendant's separate property was a wrong conclusion in absolute conflict with the previous findings upon which it purports to have been based. The last finding is a mere legal conclusion which is contrary to law and conflicts with the previous finding upon which it is founded and it is therefore not controlling.

It has been repeatedly held that an erroneous conclusion of the court which is drawn from and based upon facts previously found to be true cannot stand if the specific facts upon which the conclusion is based do not support it. (*McKay* v. *Gesford*, 163 Cal. 243, 246 [124 Pac. 1016, Ann. Cas. 1913E, 1253, 41 L. R. A. (NS) 303] ; *Corea* v. *Higuera*, 153 Cal. 451, 455 [95 Pac. 882, 17 L. R. A. (NS) 1018] ; *Estate of Hill, supra*, at p. 63; *Lee* v. *Hibernia Sav. & Loan Soc.* 177 Cal. 656, 659 [171 Pac. 677] ; *Steele* v. *Scott*, 192 Cal. 521, 525 [221 Pac. 342].) The preceding principle of law which is uniformly declared in the foregoing cases and in many

others, is concisely stated in *McKay* v. *Gesford, supra,* as follows:

"It is, of course, well settled that a general and ultimate finding . . . which is drawn as a conclusion from facts previously found, *cannot stand if the specific facts upon which it is based do not support it."* (Italics added.)

Finally, the appellant contends that the court erred in awarding to the plaintiff only one-half of the community property. She claims she is entitled to a larger proportion. In support of that claim she cites the following authorities, to wit: *Tipton* v. *Tipton,* 209 Cal. 443 [288 Pac. 65] ; *Quagelli* v. *Quagelli,* 99 Cal. App. 172, 176 [277 Pac. 1089] ; *Britton* v. *Hammell,* 4 Cal. (2d) 690 [52 Pac. (2d) 221] ; *Shapiro* v. *Shapiro,* 127 Cal. App. 20, 27 [14 Pac. (2d) 1058], and several other cases. In the case last cited, it is said in that regard:

"The plaintiff having made out her case of extreme cruelty was entitled to *more* than one-half of the community property." (Italics added.)

Precisely the same declaration was made in the Quagelli case, *supra.* That statement has been reiterated so frequently in the California cases that it seems to have been accepted as the fixed rule. It is not necessarily in conflict with the provisions of the code with respect to the distribution of community property in the event of divorce. Section 146 of the Civil Code provides that when a divorce is granted on the ground of adultery or extreme cruelty the community property shall be assigned to the respective parties "in such proportions as the court, from all the facts of the case, and the condition of the parties, may deem just." The same section declares that when a divorce is granted on any other ground "the community property shall be equally divided between the parties." It is argued that since the court must award the innocent party to whom a divorce is granted for any cause other than that of adultery or extreme cruelty, one-half of the community property, the legislature evidently intended that the innocent party to whom a divorce is granted for the more serious grounds of adultery or extreme cruelty should be entitled to more than one-half of the community property. That construction of the statute seems to be in accordance with justice, even though it may not conform to a literal interpretation of the language employed. The section confers upon the court a discretion in determining the amount of

community property to be awarded to the respective parties when a divorce is granted on the ground of either adultery or extreme cruelty. That discretion must accord with justice in the light of the facts of the particular case and the condition or circumstances of the parties as provided by that section of the code.  ■■■  From the language of the second paragraph of that section, standing alone, it would seem that a division of the community property, under the circumstances contemplated therein, should not be disturbed on appeal except for an abuse of discretion. Section 148 of the Civil Code, however, confers authority on a court of review to revise the award of distribution of community property, regardless of the discretion vested in the trial court, so as to render justice pursuant to the provisions of section 146, as it appears to exist according to the judgment of the members of the reviewing court. In other words, the appellate courts have a discretion in dividing the community property pursuant to the mandate of section 146 which is paramount and superior to the discretion vested in the trial court under such circumstances.

We are convinced of the justice of awarding to the innocent party to a divorce which is granted on the grounds of extreme cruelty and adultery, under ordinary circumstances, a greater share than one-half of the community property. Those grounds for divorce are recognized as more grievous than others which are designated by the code. The courts seem to assume that the more serious the offense which is committed against the marital status, the greater should be the punishment of the guilty party and consequently that in justice it should be followed by a proportionately larger award of the community property to the innocent party. At least there are many decisions which have held that in the event of a divorce on the ground of either extreme cruelty or adultery, the innocent party is entitled to *more* than one-half of the community property. Assuming, without so deciding, that that is the established rule in California, there is still a sound discretion imposed upon the trial court to determine under all the facts and circumstances of the case, including the status of the respective parties and their needs, how much in excess of one-half of the community property shall be awarded to the innocent party. We have no disposition to interfere with that discretion of the court, even if we have the authority to do so. In the present case it ap-

pears that the court has awarded to the plaintiff more than one-half of the community property. Specific items of personal property in the form of stocks, bonds and securities have been equally divided between the spouses, except as above stated. In addition thereto the household furniture was given to the plaintiff. Finding number XIII awards the household goods to the plaintiff. It is stated therein that this is done with the consent of the defendant. This award may be deemed to be a compliance with the asserted rule that plaintiff is entitled to more than one-half of the community property.

The portion of the interlocutory decree from which this appeal was perfected, which purports to award to the defendant as his separate property the personal property in the nature of stocks, bonds and securities, which are described in the notice of appeal and which list appears on pages 54 and 55 of the transcript, of the determined aggregate value of $42,867.70, is reversed. The court is directed to modify the decree and divide the foregoing property between the spouses as required by law. As so modified, the judgment is affirmed.

Respondent's petition for a hearing by the Supreme Court was denied February 26, 1942. Carter, J., voted for a hearing.